JOSEPH T. McNALLY
Attorney for the United States,
Acting Under Authority Conferred
by 28 U.S.C. § 515
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KAREN I. MEYER (Cal. Bar No. 220554)
SHAWN T. ANDREWS (Cal. Bar No. 319565)
Assistant United States Attorney
Violent & Organized Crime Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-8559/6104
     Facsimile:  (213) 894-3713
     E-mail:    kim.meyer@usdoj.gov
                shawn.andrews@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>EDWARD KIM,<br>　aka "Eddie,"<br><br>　　　Defendant. | No. CR 15-662-ODW<br><br>TRIAL MEMORANDUM<br><br>Trial Date:  February 1, 2023<br>Trial Time:  9:00 a.m.<br>Place:       Courtroom of the<br>             Hon. Otis D.<br>             Wright II |

　　　Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorneys Karen I. Meyer and

1   Shawn T. Andrews, hereby submits its trial memorandum.

2    Dated: January 29, 2023          Respectfully submitted,

3                                     JOSEPH T. McNALLY
                                      Attorney for the United States,
4                                     Acting Under Authority Conferred
                                      by 28 U.S.C. § 515
5
                                      MACK E. JENKINS
6                                     Assistant United States Attorney
                                      Chief, Criminal Division
7
                                           /s/
8                                     KAREN I. MEYER
                                      SHAWN T. ANDREWS
9                                     Assistant United States Attorneys

10                                    Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

### I.  CASE STATUS

2      1.    Trial is scheduled for February 1, 2023, at 9:00 a.m.  The

3 government's case-in-chief should require no more than two to three

4 court days.  The government expects defendant to testify and reserves

5 the right to call rebuttal witnesses should that occur.

6      2.    Defendant is out of custody on bond and is the sole

7 remaining defendant charged.

8      3.    Trial by jury has not been waived.

9      4.    The government anticipates calling four witnesses in its

10 case-in-chief, including (1) FBI SA Omar Trevino, who will

11 authenticate the video and audio clip exhibits and will testify

12 concerning the investigation and how he instructed the source to

13 operate as an informant, and will also testify about certain self-

14 authenticating business records and read into evidence the former

15 sworn testimony of defendant; (2) the source, who participated in

16 meetings with the defendant and various co-defendants and video-

17 recorded those meetings and had phone calls with the defendant that

18 were also recorded; (3) Lidia Banda, in the Business Execution

19 Consultants Department of Wells Fargo Bank, who will testify about

20 the Currency Transaction Reports ("CTRs") filed for the March, June

21 and September 2011 money laundering transactions; and (4) Peter

22 Platt, the government's money laundering expert.

23      5.    The government intends to use the Trial Director software

24 program in order to display evidence via the in-court monitors.  Such

25 evidence will include video and audio clips, transcript excerpts,

26 exhibits of the transcript excerpts synced with the playing video

27 clips, photographs, and documents.

28

6.    Defendant has not noticed any defenses, nor produced any reciprocal discovery.

## II.   PRETRIAL MOTIONS

On January 20, 2023, the Court heard argument on defendant's Motion to Exclude Evidence of Prior Conviction (Dkt. 771) and defendant's Motion to Exclude Expert Witness Testimony (Dkt. 806). The Court denied the Motion to Exclude Evidence and deferred ruling on the Motion to Exclude Expert Testimony. (See Dkt. 817.)

## III. INDICTMENT AND ELEMENTS

Defendant is charged with RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (Count One); money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Counts Five, Six, and 20); laundering of monetary instruments, in violation of 1956(a)(3)(B), (C) (Counts Six through Ten); evidence tampering, in violation of 18 U.S.C. § 1512(b)(2)(B) (Count 21); and evading bank reporting requirements, in violation of 31 U.S.C. § 5324(a)(2), (d)(2) (Counts 24 through 28).  The elements of these crimes will be set forth in the Proposed Jury Instructions, a draft of which has been provided to the defense.

## IV.   STATEMENT OF FACTS

In late 2010, an FBI confidential source ("CS") worked with co-defendants Peter Hung ("Hung") and Luis Krueger ("Krueger") to launder $200,000 of government-supplied cash at Saigon National Bank ("SNB") in Westminster, exchanging the cash for cashier's checks. Co-defendant Bill Lu ("Lu") was the CEO of SNB.  During that transaction, defendant appeared inside the bank alongside Hung and Krueger, but did not interact with the CS.  Later, at a meeting that took place on February 10, 2011, Lu introduced defendant to the CS

2

where the CS said that the money he was looking to launder for his (fake) organization was both "dirty" and corruption money. Defendant represented that he had the ability to launder cash on a large scale alongside Lu and co-defendant John Edmundson ("Edmundson"). At that same meeting, the CS, Lu, and defendant discussed laundering money through additional bank transactions and through the purchase of SNB by the CS and his (fake) associates. Defendant stated that it was not a bad deal for the CS and his associates to buy the bank. At a subsequent meeting, defendant said buying SNB would enable the CS and his group (along with defendant and Lu) to control the bank to launder their drug proceeds. Defendant said he would be part of the bank deal and offered to assist in a "big way."

During that same meeting, the CS agreed to facilitate a money laundering transaction for the CS on March 14, 2011, using an associate identified as co-defendant Mina Chau ("Chau"). On March 14, 2011, the CS provided defendant and Chau with $350,000 (alongside a $28,000 money laundering fee for defendant) that Chau exchanged for a cashier's check made out to a fictious business name given to her by defendant and the CS. The CS, defendant, and Chau conducted two other like transactions: $400,000 on June 20, 2011, and $500,000 on September 20, 2011. Defendant received a total of $95,000 in money laundering fees for these transactions. After a series of communications, on October 13, 2011, defendant arranged for Edmundson to wire $100,000 from Edmundson's account at Bank of China in Hong Kong to an account controlled by the FBI in Los Angeles. Defendant was paid $5,500 in fees for this international transaction. In total, defendant received over $100,000 in money laundering fees.

1    As these events unfolded, Lu informed the CS that he knew

2    Mexican nationals who needed help laundering millions in cash from

3    Mexico, and told the CS that Lu had introduced defendant to them and

4    expected defendant and Edmundson to negotiate the details.  Later, Lu

5    also introduced these individuals to the CS and the FBI identified

6    them as co-defendants Pablo Hernandez ("Hernandez") and Emilio

7    Herrera ("Herrera").  Starting in August 2011 and continuing through

8    to August of 2012, the CS, Lu, defendant, Hernandez, and Herrera

9    agreed to assist one another in laundering money.  No money was

10   actually laundered for Hernandez and Herrera.

## V.   EVIDENTIARY ISSUES

### A.   Relevant Conspiracy Law

"The agreement need not be explicit; it may be inferred from the defendant's acts pursuant to a fraudulent scheme or from other circumstantial evidence."  United States v. Cloud, 872 F.2d 846, 852 (9th Cir. 1989).  The government need not prove the existence of a formal agreement; instead, an agreement constituting a conspiracy may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose.  See United States v. Garza, 980 F.2d 546, 552-53 (9th Cir. 1992).

### B.   Co-Conspirator Statements

Declarations by one co-conspirator during the course of and in furtherance of the conspiracy may be used against another conspirator because such declarations are not hearsay.  See Fed. R. Evid. 801(d)(2)(E).  Further, statements made in furtherance of a conspiracy were expressly held by the Supreme Court in Crawford v.

4

*Washington*, 541 U.S. 36, 56 (2004) to be "not testimonial" such that their admission does not violate the Confrontation Clause.  As such, the admission of co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E) requires only a foundation that: (1) the declaration was made during the life of the conspiracy; (2) it was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it.  See *Bourjaily v. United States*, 483 U.S. 171, 173, 181 (1987).

The government must prove by a preponderance of the evidence that a statement is a co-conspirator declaration in order for the statement to be admissible under Rule 801(d)(2)(E).  *Bourjaily*, 483 U.S. at 176; *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir. 1987).  Whether the government has met its burden is to be determined by the trial judge, not the jury.  *United States v. Zavala-Serra*, 853 F.2d 1512, 1514 (9th Cir. 1988).  The Court may rely on inadmissible evidence, such as a co-conspirator's plea agreement, in determining whether the 801(d)(2)(E) exception applies. *Cf.* *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995) (the preliminary determination of whether FRE 801(d)(2)(E) applies is to be made "by the court, not the jury, pursuant to Fed. R. Evid. 104(a)); Fed. R. Evid. 104(a) ("the court must decide any preliminary question about whether . . . evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege").

To be admissible under Federal Rule of Evidence 801(d)(2)(E) as a statement made by a co-conspirator in furtherance of the

conspiracy, a statement must "further the common objectives of the conspiracy." United States v. Arambula-Ruiz, 987 F.2d 599, 607-08 (9th Cir. 1993).  Co-conspirator declarations need not be made to a member of the conspiracy to be admissible under Rule 810(d)(2)(E) and can be made to government informants and undercover agents.  Zavala-Serra, 853 F.2d at 1516 (statements to informants and undercover agents); United States v. Tille, 729 F.2d 615, 620 (9th Cir. 1984) (statements to informants); United States v. Echeverry, 759 F.2d 1451, 1457 (9th Cir. 1985) (statements to undercover agent).

### C.   Recorded Conversations

At trial, the government expects to introduce approximately 30 video and/or audio recording clips.  Each recording clip has been placed onto a compact disc, which the government will offer as exhibits at trial.

The foundation that must be laid for the introduction into evidence of recorded conversations is a matter largely within the discretion of the trial court.  There is no rigid set of foundational requirements.  Rather, the Ninth Circuit has held that recordings are sufficiently authenticated under Federal Rule of Evidence 901(a) if sufficient proof has been introduced "so that a reasonable juror could find in favor of authenticity or identification," which can be done by "proving a connection between the evidence and the party against whom the evidence is admitted" and can be done by both direct and circumstantial evidence.  United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir. 1995), modified by 98 F.3d 1100 (9th Cir. 1996).

"Where the government offers a tape recording of the defendant's voice, it must also make a prima facie case that the voice on the

6

1  tape is in fact the defendant's, whether by means of a witness who

2  recognizes the voice or by other extrinsic evidence."  Witnesses may

3  testify competently as to the identification of a voice on a

4  recording.  United States v. Gadson, 763 F.3d 1189, 1203-04 (9th Cir.

5  2014).  A witness's opinion testimony in this regard may be based

6  upon his having heard the voice on another occasion under

7  circumstances connecting it with the alleged speaker.  Fed. R. Evid.

8  901(b)(5); United States v. Torres, 908 F.2d 1417, 1425 (9th Cir.

9  1990) ("Testimony of voice recognition constitutes sufficient

10  authentication.").

11      To the extent defendant attempts to present his own statements

12  from the excerpts, such self-serving exculpatory statements by

13  defendant are inadmissible hearsay.  See United States v. Waters, 627

14  F.3d 345, 385 (9th Cir. 2010) (holding that defendant's exculpatory

15  statement proclaiming innocence "is clearly hearsay, and was

16  therefore properly excluded under Rule 801(a)").  Rule 106 regarding

17  the rule of completeness does not trump inadmissible hearsay.  United

18  States v. Collicott, 92 F.3d 973, 983 (9th[h] Cir. 1996).

19      With respect to the audio recording of a phone call, in addition

20  to the CS identifying defendant on the call, FBI SA Trevino will

21  testify to the system used to record the call, which is sufficient

22  authentication pursuant to Federal Rule of Evidence 901(b)(9),

23  Evidence about a Process or System.  Gadson, 763 F.3d at 1203-04

24  ("where the government offers an audiotape, a witness with knowledge

25  may testify that the recording is what it purports to be").

26      **D.  Photographs**

27      The government intends to introduce still photographs taken from

28  the video recordings as well as surveillance photographs.

7

Photographs are admissible as evidence, and should be admitted so long as they fairly and accurately represent the event or object in question.  United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978).

### E.   Defendant's Email Requesting Destruction of Evidence

Defendant has been charged with obstruction of justice pursuant to 1512(b)(2)(B).  As evidence of that charge, the government intends on introducing an email from defendant dated April 7, 2013, in which defendant begins:

> Scott [the UCE] – this will be my final email so please delete everything in your system (emails, text and cell).

Defendant then continues to complain about the failure of the UCE and the CS to do any more deals after the October 2011 international money laundering transaction and about the UCE's excuses and delays. This evidence is also relevant to consciousness of guilt.  See Abelar v. Miller, 2106 WL 8257690, *11 (C.D.Ca. 2016) ("the phone calls in which Petitioner urged his mother to destroy incriminating evidence and asked his girlfriend to provide an alibi were probative of Petitioner's consciousness of guilt, and the jury could have so inferred").

### F.   Business Records

#### i.   Foundational Requirements

For business records to be admissible, the following foundational facts must be established through the custodian of the records or another qualified witness: (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity.  Fed.

R. Evid. 803(6).  In determining whether these foundational facts are established, the Court may consider hearsay and other evidence not admissible at trial.  See Federal Rules of Evidence 104(a) and 1101(d)(1); Bourjaily, 483 U.S. at 178-79.

### ii. Authentication by Declaration

Certified domestic records of regularly conducted activity are self-authenticating when accompanied by a written declaration establishing that (1) the records must have been made at or near the time by, or from information transmitted by, a person with knowledge; and (2) the records must have been made and kept in the course of a regularly conducted business activity.  Fed. R. Evid. 902(11).

Custodian of records declarations may be utilized by the Court to provide a foundation for the admission in evidence of business records.  See Fed. R. Evid. 803(6)(D) (records of regularly conducted activity are not excluded by the rule against hearsay where the conditions of Rule 803(6)(D) are shown "by a certification that complies with Rule 902(11)").  Such a practice does not create any confrontation issue under Crawford v. Washington, 541 U.S. 36 (2004). See United States v. Hagege, 437 F.3d 943, 957-58 (9th Cir. 2006) .

The government has provided its exhibit list to the defense identifying those documents the government will seek to admit pursuant to Federal Rules of Evidence 803(6) and 902(11).  The 902(11) declarations for each exhibit were previously produced in discovery.

### G. Defendant's Prior Testimony Under Oath

As noted in the briefing between the parties on defendant's motion to exclude his prior, defendant has a prior federal conviction in 1993 for misapplication of bank funds.  As part of that case,

defendant cooperated with the government and testified at the trial
of a participant.  In defendant's sworn testimony, defendant
testified under oath that he had been hired in January 1986 at
Security Pacific Institutional Services and worked as an operations
officer supervising the mortgage-backed securities department.

The government has as an exhibit a redacted version of that
testimony that specifies that defendant testified to these facts
under oath.  The government intends on introducing this testimony as
a party admission pursuant to Federal Rule of Evidence 801(d)(2), and
anticipates doing so by admitting the testimony as an exhibit and
having FBI SA Omar Trevino read it during his direct examination as
the case agent.

**H.   Defendant's Proffer Statements**

Defendant proffered twice with the government, once on August
26, 2016, and a second time on September 16, 2016.  Pursuant to the
government's proffer letters, the government agreed not to use
defendant's statements in its case-in-chief except under the
following relevant circumstance:

> for the purpose of cross-examination should your client
> [defendant] testify, or to refute or counter at any stage
> of the proceedings (including this Office's case-in-chief
> at trial) any evidence, argument, statement or
> representation offered by or on behalf of your client
> [defendant] in connection with any proceeding.

Proffer letters, paragraph 4(b).  Consistent with this exception, the
government anticipates calling FBI SA Trevino in rebuttal to
introduce defendant's proffer statements in response to defendant's
anticipated testimony.  The government also reserves the right to
recall SA Trevino in its case-in-chief to refute any argument or
statement offered by defense counsel on behalf of defendant.

10